Judge Seiler's dissent suggests that by this language the Court in holding that the ordinance adopted by the City Council has no binding effect. *This is not what we hold. The ordinance,* just as any city ordinance, *governs and is binding until changed by appropriate action. We hold only that this ordinance did not result in a collective bargaining contract which could be changed only with union approval.* [emphasis added]

The formal resolution of the School Board adopted the Tentative Agreement, so that the effect of that consensus [if not as a valid contract] was that of an "appropriate action" [*Sumpter, supra*] which lawfully governed the conditions of wage and work expressed in the Tentative Agreement. It was, if not an enforceable contract because a collective bargain as to the work and employment subject, then a legitimate exercise of legislative authority which continues in effect and binds "until changed by appropriate action." [*Sumpter,* footnote 4] The resolution of the School Board remains in effect. That public body does not repudiate the content of the resolution, even now. It does not ask to avoid the restoration of the nonteacher employee class to the prestrike status—terms and conditions of employment set by that public body autonomously. It does not ask for reinstatement of the federal court litigation. It does not claim that the innumerable nonteacher employees restored to employment under the Tentative Agreement [or, under the formal resolution] infringed a legislative sovereignty. It complains only that construction of a contract term which restores *all members of the class* to the prestrike status—as the resolution [or contract] expresses—but incidentally favors Phipps, infringes a legislative prerogative. Our opinion holds that the Tentative Agreement was an exercise of the power to settle litigation and that the benefit Phipps derived was an incident of that settlement. We conclude nevertheless for the reasons we give, that were the Tentative Agreement a contract collectively bargained, the express terms of the resolution which encompassed those terms was a legislative sanction of the restoration of employment—Phipps included—a sanction still in effect and so beyond any cavil.

The motion for rehearing is denied.

**STATE of Missouri, Respondent,**

v.

**John W. MOORE, Appellant.**

**No. WD 33408, 33409.**

Missouri Court of Appeals,
Western District.

Nov. 23, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 4, 1983.

John R. Shank, Liberty, for appellant.

John Ashcroft Atty. Gen., and Priscilla Gunn, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

ORDER

PER CURIAM:

Appeal from convictions for attempted kidnapping, § 564.011, RSMo 1978, and

stealing a motor vehicle, § 570.030, RSMo 1978.

Affirmed.   Rule 84.16(b).

STATE of Missouri, Respondent,

v.

John W. MOORE, Jr., Appellant.

No. WD 33407.

Missouri Court of Appeals,
Western District.

Nov. 30, 1982.

John R. Shank, Gladstone, for appellant.

John Ashcroft, Atty. Gen., and Priscilla Gunn, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Defendant Moore was jury convicted of robbery in the first degree (Section 569.020, RSMo 1978) and sentenced to 30 years in the Department of Corrections. He did not offer any evidence nor did he question the sufficiency of the evidence to support his conviction. The only point raised on appeal by defendant is that the weapon admitted in evidence was not connected with the defendant nor with the crime and therefore was not relevant or material and its introduction was prejudicial to him.

At 9:00 p.m. on June 22, 1981 the defendant, at gunpoint robbed the attendant of the Tommy Oil Company in North Kansas City, Missouri. The defendant took between $100 and $150 in cash. A female companion and defendant forced a lady customer from her car and took the car to make good an escape. A few moments later defendant was seen by a policeman in the stolen car. The car's lights were out and it had just run a red light at an intersection one block from the robbery scene. The police gave chase and next saw defendant on foot running through a scrap metal yard adjacent to the Sesco Building in North Kansas City. The yard had a 6 foot fence around it with another 6 inches of barbed wire at the top. Defendant was then seen and captured on top of the Sesco Building. He had neither a gun nor any money with him at the time of capture.